**BLUMCRAFT OF PITTSBURGH, a Partnership, consisting of Hyman Blum, Max Blum, Louis Blum and Harry P. Blum,**

v.

**The UNITED STATES.**

**No. 38–63.**

United States Court of Claims.

Feb. 17, 1967.

---

James C. McConnon, Philadelphia, Pa., for plaintiff; Henry N. Paul, Jr., Philadelphia, Pa., Robert U. Geib, Jr., Washington, D. C., and Paul & Paul, Philadelphia, Pa., of counsel.

Michael T. Platt, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

PER CURIAM:

This case was referred to Trial Commissioner Donald E. Lane, with directions to make findings of fact and recommendation for conclusions o_ law. The commissioner has done so in an opinion and report filed on September 22, 1966. The case is before the court on plaintiff's motion for judgment on the issue of liability, filed November 14, 1966, wherein plaintiff moves that the court adopt the commissioner's report per curiam as the opinion and findings of the court and that judgment be entered on the issue of liability on the basis of the petition as amended,* and that the case be referred to the commissioner for an accounting to determine the amount of compensation to which plaintiff is entitled. Defendant has filed no opposition ɔr response to plaintiff's motion for judgment on the issue of liability and the time for so filing pursuant to the rules of the court has expired. Since the court agrees with the trial commissioner's findings, opinion and recommendation for conclusions of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Therefore, the court concludes that design patent D–171,963 is valid and has been infringed and that plaintiff is entitled to recover on the petition as amended for the unauthorized use by defendant of the invention defined in said design patent. Plaintiff's motion for judgment on the issue of liability is

---

* Plaintiff's second amendment to the petition on which defendant had entered its consent was filed November 2, 1966.

allowed and judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Rule 47(c) (2).

OPINION OF COMMISSIONER**

LANE, Commissioner:

This is a patent suit under Title 28 U.S.C. § 1498, in which plaintiff seeks to recover reasonable and entire compensation for the unauthorized use of a patented invention. Plaintiff, a partnership having its place of business in Pittsburgh, Pennsylvania, is the owner of United States Design Letters Patent No. D–171,963, entitled "Rail," and which was issued on April 20, 1954, for a term of 14 years. The patent is hereinafter referred to as the design patent. It is found that the design patent is valid and that it has been infringed by defendant.

The issues now before the court are the issues of design patent infringement and design patent validity. Defendant contends that the design patent must be limited in scope to the railing design illustrated, i.e., that no element illustrated may be eliminated, and contends that the design patent is invalid under Title 35 U.S.C. § 103 as being an *obvious* design in view of the state of the art prior to the summer of 1952. The application for the design patent was filed April 24, 1953.

The design patent claim reads: "The ornamental design for a rail, as shown." Only one claim is required in a design patent. The above claim is written as required by the United States Patent Office. In determining whether or not a design patent is infringed it is necessary to examine the illustrative drawing rather than detailed claim language. The test for design patent infringement is substantial identity of appearance. The true test of identity of design is the sameness of appearance, and the mere difference of lines in the drawing, a greater or smaller number of lines, or slight variances in configuration will not destroy substantial identity. Gorham Mfg. Company v. White, 81 U.S. (14 Wall.) 511, 526, 20 L.Ed. 731 (1871). The test of sameness of effect on the eye means the eye of an ordinary observer rather than the eye of an expert in the subject matter. If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an ordinary purchaser, inducing him to purchase one supposing it to be the other, the design patented is infringed by the other. *Gorham,* supra, 528.

The distinguishing features of the rail design shown in the design patent are set out in finding 6. Stated more briefly, the patented rail design creates an illusion of a plurality of hand rails floating in space away from the supporting posts. The aesthetic effect is pleasing. The testimony of witnesses for both parties supports the conclusion that the overall effect of the designs of the several accused installations is like the overall effect of the design taught by the design patent. There are minor differences in some installations in the number of hand rails, the ends of the rails, and the ornamentation of the supporting posts, but the overall effect is one of substantial identity. The differences are discoverable only by close scrutiny.

The observer test for determining infringement of design patents has been followed many times since its announcement years ago in the *Gorham* case. The test was applied in the case of a design for a table top in 1960. E. H. Sheldon & Co. v. Miller Office Supply Co., Inc., 188 F.Supp. 67, (DC-Ohio, 1960). The issue

---

** The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57 (a).

of infringement of a design patent presents a question of fact for the trier of the facts to determine. The evidence in this case supports a finding that defendant's hand rail installations identified in finding 9 produce the same floating in space effect away from the supporting posts as the design illustrated in plaintiff's design patent. The designs have the same pleasing aesthetic effect on a normal observer.

Defendant contends that the design patent is invalid in view of Title 35 U.S.C. § 103 which provides that a patent may not be obtained though the invention is not identically disclosed or described in a printed publication or in public use, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Defendant has relied upon 15 prior publications and 1 prior use, and urges that it would have been obvious to select one or more features from each of several of the citations to come up with the design taught by the design patent. It is clear that many new designs might be created by this approach of picking a feature here and another feature there. However, it is equally clear that every such possible combination would not have the pleasing aesthetic effect, appeal of beauty, and compatibility with modern architecture achieved by the design taught by plaintiff's design patent. Invention lies in the combination of certain features to create a desirable effect.

Defendant's witness stated that the railing shown in Architectural Record, 1940, page 68, defendant's exhibit 2, produced the *closest* visual effect of the several prior art items relied upon by defendant to anticipate the design patent. The witness stated further that to obtain the same visual effect as the patented design it would be necessary to modify the Architectural Record railing by changes in rail section, changes in the post direction, and changes in the decorative features, and that one would really have to reconstruct said prior art railing to obtain the same visual effect. The Architectural Record railing illustration shows pipe rails and pipe posts but does not clearly show how the rails are secured to the post. The overall appearance of this prior art item is not one of having a plurality of rails arranged in the same vertical plane offset from the plane of the posts to produce an illusion of a plurality of hand rails floating in space away from the supporting posts.

A design must be judged from its appearance as a whole and to be patentable must possess beauty and originality. The mere fact that all the elements of a design may be individually old does not prevent a design from being patentable. Application of Johnson, 36 CCPA 1145, 175 F.2d 789 (1949). That there is but a simple regrouping of old elements does not negative design invention, for simplicity may be ingenious in reaching a new and pleasing ornamental design. It is in the combination of design features in which originality and aesthetic skill may be evidenced. Such originality is shown in the design taught by plaintiff's design patent. The importance of the appearance of the whole design was noted by Chief Judge Garrett in the following language in Application of Jennings, 182 F.2d 207, 37 CCPA 1023 (1950):

In considering patentability of a proposed design the appearance of the design must be viewed as a whole, as shown by the drawing, or drawings, and compared with something in existence—not with something that might be brought into existence by selecting individual features from prior art and

combining them, particularly where combining them would require modification of every individual feature, as would be required here.

A design patent covers a design as a whole, and not any part of it as a part. A design patent is to be tested as a whole in considering novelty and infringement. Dobson v. Dornan, 118 U.S. 10, 15, 6 S.Ct. 946, 30 L.Ed. 63 (1886).

■ Obviousness or nonobviousness is determined by consideration of the scope and the content of the prior art, the differences between the prior art and the design claimed, and the level of ordinary skill in the pertinent art. Secondary consideration may be given to commercial success, long felt but unsolved needs, and the failure of others to provide a satisfactory solution. Graham v. John Deer Co. of Kansas City, et al., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Plaintiff's design patent possesses novelty, utility, and nonobviousness, and passes the accepted tests for patentability.

In 1949 this court considered a design patent and relied on the test of infringement laid down by the Supreme Court in the *Gorham* case, supra. The court found that certain secretary-bureau, safe locker, and dental cabinet designs used by the Department of the Navy did not have *sufficient identity of appearance* with a design patent for a combination bookcase and desk-cabinet to constitute infringement thereof. Dickey v. United States, 114 Ct.Cl. 439, 455, 84 F.Supp. 741, (1949), cert. denied, 338 U.S. 938, 70 S.Ct. 339, 94 L.Ed. 578 (1950). In 1955 this court considered a design patent on a plastic-covered wire staple removing device. The court found that patent invalid and stated that the only substantial difference between the prior art staple remover and the patented design was one of materials of manufacture and not of design. Ace Fastener Corporation v. United States and Paragon Plastic Corporation, 149 Ct.Cl. 555, 276 F.2d 391.

In the present case it is concluded that the accused rail installations do have sufficient identity of appearance with that of the plaintiff's design patent for a rail to constitute infringement, and it is concluded further that the design patent illustrates a pleasing design not taught by or obvious from the prior art and is valid thereover.

Summarizing, it is found that plaintiff's design patent is valid and has been infringed by defendant. Plaintiff is entitled to recover reasonable and entire compensation for such unauthorized use, the value of which should be determined by further proceedings pursuant to Rule 47(c).

FINDINGS OF FACT

1. This is a patent suit brought under Title 28 U.S.C. § 1498 for the recovery of reasonable and entire compensation for unlicensed use or manufacture by or for the United States of the invention covered by design patent No. D–171,963 relating to an ornamental design for a railing. The petition was filed February 12, 1963, and was amended and supplemented by a petition filed August 20, 1965.

2. The plaintiff, Blumcraft of Pittsburgh, is a partnership consisting of Hyman Blum, Max Blum, Louis Blum, and Harry P. Blum, all of whom are citizens of the United States and residents of Pittsburgh, Pennsylvania, said firm having its principal place of business at 460 Melwood Street, Pittsburgh, Pennsylvania 15213.

3. Design patent No. D–171,963 was issued to Louis Blum on April 20, 1954, for a term of 14 years, on an application filed April 24, 1953. The patentee assigned this patent to the plaintiff April 25, 1955, by an instrument recorded in the United States Patent Office. Plaintiff is the owner of the patent in suit. The patent drawing and specification are reproduced herein. In the first action by the Patent Office Examiner, it was stated that the drawing appeared to dis-

close novelty. Following compliance with formal requirements, the application for patent was allowed without a rejection on prior art.

---

April 20, 1954

Des. 171,963

L. BLUM

Rail

*Filed April 24, 1953*

Term of patent 14 years

(Cl. D28—1)

*To all whom it may concern:*

Be it known that I, Louis Blum, a citizen of the United States, residing at Pittsburgh, county of Allegheny and State of Pennsylvania, have invented a new, original, and ornamental Design for Rails, of which the following is a specification, reference being had to the accompanying drawing, forming a part hereof, in which:

The single figure is a view in perspective of a rail, showing my new design.

I claim:

The ornamental design for a rail, as shown.

REFERENCES CITED IN THE FILE OF THIS PATENT

Sweet's File, Architectural, 1952, section 6*e*, sub-section RE, page 14; section 6*e*, sub-section HA, page 7, and section 6*e*, sub-section BL, page 3, top left and right items.

4. Louis Blum joined the Blumcraft firm in 1927. At that time its business was in the manufacture of ornamental and miscellaneous iron work. During the 1930's and 1940's Louis Blum was engaged in the capacity of a partner, in designing for the firm iron, bronze, and aluminum products such as railings, lanterns, lighting fixtures, and hand-forged hardware. In the summer of 1952 he conceived the railing design which is the subject of the patent in suit as a design to be used for a stairway railing in a private residence in substitution for a proposed railing that had been designed for said residence by an architect. A model embodying the Blum design was built and tested about July or August 1952. Shop drawings of the railing were made by Louis Blum on September 18, 1952. The model was seen and approved by the residence owner in the Blumcraft offices. The aforesaid railing design created by Louis Blum came about some time after architecture in this country, especially that of monumental buildings, had changed considerably in the direction of the modern or contemporary style.

5. The modern or contemporary school of architecture began to receive recognition in the 1920's and became more substantially established in the 1930's. It has since become a mass movement throughout the world. Characteristic of the movement is the effort in the design of buildings to free certain planes and surfaces so as to give them the effect of floating in space, also the effort to achieve simplicity by the elimination of features which are irrelevant because lacking functional justification, and by the use of clean, continuous, uninterrupted lines. The design of railings was slow compared to other products in keeping up with modern design. By 1936 a definite need had arisen for a railing design both pleasing to the eye and having a simplicity compatible with the contemporary styling of buildings, particularly monumental buildings. There was also a need for a design made up of component parts which could be made available from stock and readily adapted by an architect to suit the exigencies of a particular building structure. Designers and fabricators of railings had failed to satisfy these needs, and it was therefore a common practice in 1952 for architects to make their own railing designs on a job-by-job basis. Thousands of railings were designed in an effort to produce something which was harmonious or compatible with the modern school of design for buildings.

6. The design illustrated in the patent in suit is characterized by hand rails which appear to have a clean sweep of continuous uninterrupted lines separate from the upright supports. The hand rails are so arranged in relation to such upright supports as to present the effect of floating in space. The distinctive features of the design of the patent in suit comprise:

a. A plurality of spaced parallel posts generally rectangular in cross section and arranged so as to present a series of spaced parallel vertical surfaces;

b. A plurality of spaced parallel hand rails generally flat or rectangular in cross section and arranged in the same vertical plane so as to present a series of parallel horizontal surfaces;

c. Connecting brackets attaching the underside of each hand rail to the adjacent edge of each post, each bracket comprising a rod-like member extending at right angles to the post and a substantially flat triangular member extending upward from the rod-like member to the center of the underside of each rail leaving the rail unobstructed throughout the hand-gripping portion thereof;

d. The aforesaid elements so designed and arranged as to cause the hand rails to appear to float in space away from the posts.

7. Since the introduction of the railing design illustrated in the patent in suit, the business of plaintiff has increased greatly. The design has stood

the test of time and continues to receive favor from architects and builders. The design has enjoyed commercial success.

8. The defendant has never had and does not now have any written authorization or license from plaintiff to use the invention of the design patent in suit.

9. Plaintiff has presented photographs of railing installations at certain of defendant's agencies as evidence of infringement of the patent in suit. These photographs are included herein by reference and comprise:

a. The railing in the entrance lobby of the 3.5 ft. hypersonic wind tunnel, National Aeronautics and Space Administration, Ames Research Center, Moffett Field, California. (Plaintiff's exhibits 39 ((b)–(l), incl.).)

b. The railing on stairway No. 1, Data Reduction Center, National Aeronautics and Space Administration, Ames Research Center, Moffett Field, California. (Plaintiff's exhibits 39 ((o)–(s), incl.).)

c. The railing on stairway No. 2, Data Reduction Center, National Aeronautics and Space Administration, Ames Research Center, Moffett Field, California. (Plaintiff's exhibits 39 ((t) and (u).)

d. The railing of the front stairs of the new school building, Department of the Interior, Bureau of Indian Affairs, Stewart, Nevada. (Plaintiff's exhibits 39(w), (x), (y), (z), (aa).)

e. The railing on the side stairs of the new school building, Department of the Interior, Bureau of Indian Affairs, Stewart, Nevada. (Plaintiff's exhibits 39(bb) and (cc).)

f. The railings leading to the doorways of the building of the Department of the Interior, Forestry Service, at Mount Hebron, California. (Commissioner's exhibit 3.)

10. The design of the railing in the entrance lobby of defendant's NASA office building identified in item a. of finding 9, and depicted in plaintiff's exhibits 39(b)–(l) and also shown in defendant's exhibits 25(A)–(F) and 28, *typifies* the subject matter charged to infringe plaintiff's patent here in suit. Said railing was manufactured and installed by or for the defendant at some date subsequent to December 2, 1958, and prior to the February 12, 1963, filing date of plaintiff's original petition.

11. Each of the distinctive features of plaintiff's patented design set forth in finding 6 above is present in each of the accused structures. Said accused structures produce in their overall effect upon the eye a clean, uninterrupted sweep of parallel railing surfaces giving the impression that the said surfaces float in space away from the supporting posts to which they are connected. In applying a railing of any specific design to a structure such as a stairway, platform, or balcony, it is to be expected that the railing must be adapted or conformed to meet the special conditions imposed by such structure. Necessarily the nature of the terminations, the character of the slopes and changes of direction of the hand rails, the number and spacing of the posts, and the manner of mounting the lower ends of the posts, are variable factors that are determined and controlled by the environmental conditions which are encountered. Such adaptation or conformation of a railing to a particular structure need not destroy the identity or change the distinctive features of a railing design.

12. When viewed in the manner and at the distance at which railings are customarily observed, each of the several accused railing constructions is indistinguishable from the railing design disclosed in the plaintiff's patent in suit. When the railings are carefully scrutinized or placed side by side for element by element comparison, such differences as may appear reside in minute and inconsequential details or result from the adaptation of the patented design to meet the conditions of a particular installation. No difference of substance has been shown and the overall impression

upon the eye of the beholder is the same. The aesthetic effect is one of identity.

13. Defendant contends that the design patent in suit is invalid over the disclosures of the following 15 prior publications plus a railing installation in Chicago, Illinois. The defendant's exhibit number is indicated by DX.

a. Architectural Forum, March 1937, page 222, DX-1.

b. Architectural Record, August 1940, page 68, DX-2.

c. Architectural Forum, October 1942, page 43, DX-3.

d. New Pencil Points, January 1943, page 24, DX-4.

e. Architectural Forum, March 1950, page 100, DX-5.

f. Architectural Forum, July 1950, page 75, DX-6.

g. Sweet's Catalog Service of 1951, Arch. Sec. 6a/A, page 21, DX-7.

h. Progressive Architecture, November 1951, page 26, DX-8.

i. Sweet's Catalog Service of 1952, Arch. Sec. 6c, page 14, DX-9.

j. Architectural Detailing, Hornbostel & Bennett, Reinhold Publishing Co., 1952, page 165, DX-10.

k. Architectural Detailing, 1952, page 166, DX-11.

l. Architectural Detailing, 1952, page 158, DX-12.

m. Progressive Architecture, August 1950, page 97, DX-12A.

n. Architect's Working Details, Boyne, Architectural Press, Great Britain, 1953, page 60, DX-13.

o. Excerpts from Ornamental Metal Handbook, 1945, DX-42A, 42B, and 42C.

14. Defendant contends that the design patent in suit is invalid over the design of a railing installed in April 1952 in the Home Federal Savings and Loan Building at 202 South State Street, Chicago, Illinois. This railing is shown in DX-24A-2, and comprises a single hand railing supported by heavy acute angle gooseneck-shaped brackets offsetting it from and above a series of framed and spaced glass panels. The overall appearance of the Savings and Loan railing is different from the appearance of the railing design illustrated in the patent in suit. The single Savings and Loan hand rail does not have the appearance of floating in space.

▬▬ Defendant's expert stated that there is no railing shown in the cited prior art that would produce the same visual effect in all respects as that produced by the railing illustrated by the design patent in suit. He also testified that in his opinion the railing shown in Architectural Record, 1940, DX-2, produced the *closest* visual effect to that of the patented railing, and that to obtain the same visual effect it would be necessary to modify said prior art railing by changes in the rail section, in the post section, in the post direction, and in the decorative features, and that one would really have to reconstruct the entire prior art railing to produce the visual effect of the railing design of the patent in suit.

16. None of the other prior art railing disclosures presented by defendant produces a visual effect any closer to that of the patent in suit than DX-2 chosen by defendant's expert. DX-2 shows pipe rails and posts but the connecting means are not clearly apparent. Architectural Forum, DX-1, shows a double railing supported by posts having relatively heavy U-shaped brackets at the post top. Architectural Forum, DX-3, shows a continuous hand rail supported by brackets from tubular posts which project above the rail. New Pencil Points, DX-4, shows a mesh screen railing supported by offset posts. Architectural Forum, DX-5, shows a stair railing having tubular rails and tubular posts in a single plane. Architectural Forum, DX-6, is similar to DX-5, but appears to include glass panels between tubular rails offset from tubular posts. Sweet's, DX-7, shows tubular hand railing supported by tubular posts in a single plane with a single stair post offset. Progressive Architecture, DX-8, shows a stair rail supported on the tops of rectangular cross section posts which

also carry flat strip guard members. Sweet's, DX–9, shows a stair rail having three flat strips mounted on tubular posts without offset. Architectural Detailing, DX–10, shows a single hand rail carried by offset posts supporting glass panels. Architectural Detailing, DX–11, shows a box-like hand rail carried by offset square posts supporting frosted glass panels. Architectural Detailing, DX–12, and Progressive Architecture, DX–12A, show pipe stair rails similar to those shown in DX–2. Architect's Working Details, DX–13, shows the same pipe stair rails illustrated in DX–12. Excerpts from Ornamental Handbook, DX–42A, 42B, and 42C, show a variety of railing braces, center rails, and wall bracket fastenings, all unlike in appearance those illustrated in the design patent in suit.

17. None of the citations relied on by defendant as prior art embraces all of the distinctive features of the Blum patented invention as set forth in finding 6, nor do the prior art exhibits, including those pertaining to the railing installed in the Chicago building, whether considered individually or collectively, contain any teaching or disclosure suggesting a design containing all of said distinctive features. A designer with skill in the railing art having before him the prior art citations relied on by defendant and the photographs of the prior use, would have to engage in substantial redesigning of the elements shown therein in order to achieve a design like that shown in the patent in suit in which the rails appear to float away from the vertical posts. None of the citations relied on by defendant as prior art, including the exhibits illustrating the prior use, produces the overall aesthetic effect upon the eye which is produced by the design illustrated in the patent in suit. None discloses rails having a clean sweep of uninterrupted lines separate from the upright posts, presenting the illusion of floating in space.

18. At the trial, the trial commissioner ordered that only the issues of patent infringement and patent validity would be considered and that any accounting issues should be deferred until entry of an order by the court on liability, and that in the event of an accounting both parties should have the right to present evidence upon patent marking and upon the right of plaintiff to recover compensation from the defendant by reason of the manufacture and use by or for the defendant of railings produced by Kawneer Corporation and/or Railcraft Corporation.

### CONCLUSION OF LAW

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that design patent D–171,963 is valid and has been infringed and that plaintiff is entitled to recover for the unauthorized use by defendant of the invention defined in said design patent. Judgment is entered to that effect. The amount of recovery will be determined pursuant to Rule 47(c) (2).