BLUMCRAFT OF PITTSBURGH, a Partnership, Consisting of Hyman Blum, Max Blum, Louis Blum, and Harry P. Blum, Appellee,

v.

CITIZENS AND SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, Daniel Construction Company, Inc., and Colonial Iron Works, Inc., Appellants.

No. 12719.

United States Court of Appeals
Fourth Circuit.

Argued Dec. 2, 1968.

Decided Feb. 19, 1969.

Certiorari Denied June 16, 1969.
See 89 S.Ct. 2103.

**558**

Warren N. Williams, Kansas City, Mo., (Gordon D. Schmidt Kansas City, Mo., and Donald L. Ferguson, Greenville, S. C., on brief), for appellants.

James C. McConnon, Philadelphia, Pa., (Henry N. Paul, Jr., and Paul & Paul, Philadelphia, Pa., Ralph Bailey, Jr., and Bailey & Dority, Greenville, S. C., on brief), for appellee.

Before SOBELOFF, WINTER, and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

This appeal is taken from the district court's ruling that two patents, D–171,963 for design and 2,905,445 for a mechanical device, owned by Blumcraft of Pittsburgh were valid and infringed by railings produced by Architectural Art Manufacturing Co.[1] We hold that both patents are invalid under 35 U.S.C. § 103.

### I.

Blumcraft's design patent, D–171,963, was granted April 20, 1954 to Louis Blum for a railing styled for use in buildings of contemporary architecture. His application contained a single claim for the design "as shown" in a drawing. The railing consists of multiple parallel rails offset from vertical posts. The handrails are generally flat with slightly curved gripping surfaces. The posts are rectangular. Inconspicuous L-shaped brackets attach the undersides of the rails to the posts, leaving the gripping surfaces of the rails unobstructed. The multiple, offset, and parallel handrails set up a horizontal plane in opposition to the vertical plane formed by the parallel posts. The result, with the connections between the two planes minimized, is the visual illusion that the handrails are floating free.

The law authorizes the grant of a patent to "[w]hoever invents any new, original and ornamental design for an article of manufacture * * *." 35 U.S.C. § 171. Architectural Art urges that the design patent is invalid under 35 U.S.C. §§ 102 and 103 because it was anticipated by the prior art and its subject matter was obvious to a person having ordinary skill in the art of creating ornamental railings. The Court of Claims recently found Blum's design patent valid. Blumcraft v. United States, 372 F.2d 1014, 178 Ct.Cl. 798 (1967). We agree with it and with the district court that Blum's design was novel because the prior art did not disclose multiple rails offset from posts by inconspicuous connectors presenting the illusion of the rails floating in space. But a design must be more than novel. As Judge Soper wrote in Glen Raven Knitting Mills v. Sanson Hosiery Mills, 189 F.2d 845, 851 (4th Cir. 1951):

> "[T]here must be an exercise of the inventive faculty, and if the design lacks this quality, it will not suffice to say that it is new, original and ornamental, and has received wide public acceptance."

1. Blumcraft v. Citizens & So. Nat'l Bank, 286 F.Supp. 448 (D.S.C.1968). The patents are reproduced in the appendix.

Blumcraft v. Citizens & So. Nat'l Bank, 255 F.Supp. 441 (D.S.C.1966) (ruling on venue).

Title 35 U.S.C. § 103 [2] denies patentability to a novel design if the differences between the design and the prior art are such that the design would have been obvious to a person skilled in the art of designing ornamental railings. The test for obviousness, which must be applied as critically to designs as to other inventions, is: "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined." Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

Multiple parallel rails offset from their supporting posts were known to the prior art. Two examples are Hollaender's stair rail, 1949, and Wallach's Jamaica store, 1950. However, neither of these designs, nor the many examples of multiple rails that intersect their posts, gave the floating effect which the district court found in Blum's patent. Prior art also discloses that architects who custom designed railings, not Blum, first appreciated and met the requirements of contemporary architecture for modern railing design. In a church built in the early 1940's, Eliel and Eero Saarinen achieved a floating effect with a single rail offset from balusters by inconspicuous brackets. The rail follows the stairwell from flight to flight with unbroken lines. A similar illusion was obtained in a sanatorium built in the mid-1930's. Photographs of the Kansas City Auditorium, published in 1937, and of a W. T. Grant store, published in 1940, disclose relatively flat, single handrails offset from posts and walls by subdued brackets. A Chicago savings and loan office contains a railing installed in 1952 that follows and reinforces the lines of a curved staircase. The architect accentuated the separation between the horizontal and vertical lines of the railing by offsetting the top rail with brackets.

■ The differences between the prior art and Blum's design are minor. His predecessors offset multiple rails with prominent connectors and single rails by inconspicuous connectors. Blum merely offset multiple rails by inconspicuous connectors to achieve with several rails the floating effect that had previously been imparted to a single rail. It is apparent from the sophistication of the prior art that designers of ornamental railings, including manufacturers and architects, were highly skilled. Therefore, the fact, which the district court emphasized, that prior art would have to be redesigned to achieve Blum's railing is not decisive. The joining of known components usually requires skill, but this does not necessarily negate obviousness. Cf. Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606 (1893).

■ Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), also directs inquiry into secondary indicia of obviousness or nonobviousness, including commercial success and long-felt but unsolved needs. Blumcraft's commercial success lay in the fact that it was the first to offer a railing of acceptable modern design as a prefabricated product. Both Blum and an architect testifying in his behalf stressed this point, and Blumcraft's advertising emphasized the utilitarian advantages of its railing. [3] However,

**2.** Title 35 U.S.C. § 103 provides:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.
* * * *"

**3.** In 1953 Blumcraft advertised:
"*Blumcraft* presents a new approach in railings,—interchangeable components that afford the Architect greater flexibility in design, reduce to a minimum the hazards of errors in

commercial success that results from the prefabrication of a known architectural style, and not creative artistry, fails to support patentability. Cf. Battery Patents Corp. v. Chicago Cycle Supply Co., 111 F.2d 861 (7th Cir. 1940); R-Way Furniture Co. v. Duo-Bed Corp., 216 F.Supp. 862 (N.D.Ill.1962).

■ To prove long-felt, unsolved need, Blumcraft says, "The need for a commercially available railing system compatible with modern architecture had existed for some time prior to the Blum invention." This observation illustrates both Blum's success and the invalidity of his patent. There was no unsolved need for attractive modern railings. Architects were capable of supplying them through custom design. There was a need, however, for a prefabricated railing system embodying modern design. Blum met this need by adapting known custom designs to a prefabricated railing system. Blum's product enabled architects to specify the number and location of posts and the number and spacing of rails to create designs compatible with the architecture of many modern buildings. Blum's contribution to the art was not his design; this was obvious. It was his railing system which was unique. But Blum's railing system is not the proper subject of a design patent. The statutory grant of a design patent is for appearance [4] and not for a method of manufacture or assemblage,[5] function, or utility.[6]

## II.

■ Blum's mechanical patent, 2,905,445, was issued September 22, 1959 upon an application filed June 16, 1955. The two claims in suit are Nos. 1 and 3.[7] The patent, as described by the district

---

measurements, templates and shop fabrication, and permit ease of installation in the field by ordinary mechanics without special tools. Simple field adjustment for height, pitch and spacing is provided * * * * and because *budget* is always a limiting factor in railing design, the reduced costs in fabricating and erection will be particularly appealing to the Architect. * * * * * "Complete railings or component parts available to metal fabricators."

4. 35 U.S.C. § 171; Gorham Mfg. Co. v. White, 81 U.S. 511, 525, 14 Wall. 511, 20 L.Ed. 731 (1872); Deller's Walker on Patents, § 158 (2d ed. 1964).

5. Harmon Paper Co. v. Prager, 287 F. 841, 843 (2d Cir. 1923); Harmon Paper Co. v. Kimberly Clark Co., 289 F. 501, 508 (E.D.Wis.1922).

6. Connecticut Paper Products v. New York Paper Co., 127 F.2d 423, 429 (4th Cir. 1942).

7. Claim 1: "In an ornamental rail structure, ornamental post means, ornamental rail means having a dovetail shape base portion and an upper hand-gripping portion, separate V-shape clamping means in juxtaposition forming a dovetail shape recess receiving and clamping the dovetail shape base portion of said rail means and exposing the upper portion of said rail means for hand-gripping, connecting means rigidly connecting said clamping means and said rail means in spaced relation to said post means and threaded bolt means passing through said clamping means forcing and retaining said clamping means together."

Claim 3: "In an ornamental rail structure, ornamental post means, ornamental rail means having a dovetail shape base portion and an upper hand-gripping portion, means connecting said rail means in spaced angular relation to said post means comprising a pair of separate clamping members, the first of said clamping members being rigidly affixed to said post means and extending outwardly therefrom, the second of said clamping members being connected to said first clamping member by threaded bolt means, said clamping members having complementary V-shape portions forming a dovetail recess receiving the dovetail shape portion of said rail means and exposing the upper portion of said rail means for hand-gripping."

judge, "is characterized by a clamping connector for connecting an ornamental handrail in spaced relation to an ornamental post, comprising separate v-shaped clamping means which receive and clamp the dovetail shaped base portion of the handrail." The controversy involves the device that holds the rail offset from the posts. It is depicted in Blum's application as a cylinder attached perpendicularly to the post by a bolt. Attached to the end of that cylinder by another bolt is a second cylinder of the same diameter. Screwed together, the cylinders grip, in a mouth formed by v-shaped notches, the dovetail base of a handrail. As Blum explained, the connector gripped the handrail like a vise.

The prima-facie presumption of the patent's validity [35 U.S.C. § 282] can be given little weight. The Patent Office cited none of the ornamental railings found in the prior art. Cf. Heyl & Patterson, Inc. v. McDowell Co., 317 F.2d 719, 722 (4th Cir. 1963). It referred, instead, to a device like a toggle bolt for fastening fixtures to a wall, to a split glass or porcelain knob for stringing electrical transmission wires, to a bracket for attaching a lamp to a typewriter, to an anti-theft bracket for attaching a fog light to an automobile bumper, and, finally, to a device for clamping scaffolding which does not need an unobstructed handrail.

By 1954 the use of posts and handrails was ancient. And placing the rail in "spaced relation" to the post was well-known. Indeed, these elements were found in Blum's design patent, which is prior art. In addition, the unpatented device Blum originally used in railings manufactured from his design patent disclosed the flexibility plus rigidity that the district court found unique to Blum's later mechanism. Absent from Blumcraft's original device was the use of clamps with v-shaped notches to secure dovetailed rails, but a dovetail grip had been widely used. It appeared, for example, in Hardy's patent 163,996, issued in 1875. Hardy used a clamp drawn together by screws to hold a handrail above the top of a post. The clamp's grip resembled that formed by a man's thumb and index finger. It engaged the dovetail base of the rail the way Blum's does. The chief difference between the devices lies in the way the clamp is fixed to the post: Hardy's clamp gripped the top of the post as well as the rail; Blum attached one cylinder of his clamp to the side of the post by a bolt. We believe, however, contrary to the district judge, that this difference is insubstantial. It was within the skill of an ordinary mechanic to attach a vise-like clamp to a post in any number of positions by any number of means. Nor is it significant that the surface of Hardy's clamps form the lower part of his handrail. They need not function exclusively as clamps to make their dovetail grip apparent. The prior art of ornamental railings is sufficient to establish the obviousness of Blum' patent.

Moreover, devices similar to Blum's have long been used to secure railroad rails. The best example is McNeil's 1915 patent, 1,165,195, which used a two-part clamp drawn together by bolts to grip the base of the rail in a shaped recess and anchor it to straps or bars. The fact that McNeil's mechanism was designed to hold railroad rails and not handrails does not make his patent irrelevant. Both his mechanism and Blum's perform the same function: they stabilize a rail without interfering with the use of its upper surface. Because both are simple devices employing the same universally known principles of mechanics, McNeil's patent is pertinent prior art and supports our conclusion that Blum's device was obvious. Mast, Foos, & Co. v. Stover Mfg. Co., 177 U.S. 485, 493, 20 S.Ct. 708, 44 L.Ed. 856 (1900); Knapp v. Morss, 150 U.S. 221, 226, 14 S. Ct. 81, 37 L.Ed. 1059 (1893); Skee-Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895, 898 (8th Cir. 1966).

The judgment of the district court is reversed, and this case is remanded for entry of final judgment in favor of the defendants.