**GETTY v. KINZBACH TOOL CO., Inc., et al.**

**No. 9672.**

Circuit Court of Appeals, Fifth Circuit.

April 22, 1941.

Reconsideration Denied May 10, 1941.

J. O. Modisette, of Jennings, La., Jesse J. Lee, of Houston, Tex., and Nelson J. Jewett, of Washington, D. C., for appellant.

Dwight H. Austin, of Houston, Tex., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant Fred I. Getty was granted patent No. 1,502,428 on July 22, 1924, covering a whipstock for oil wells. He operates a machine shop and some oil wells. He did not manufacture commercially his invention, but made about thirty of his whipstocks for his own use, and about an equal number on special orders for other persons. The appellee since 1926 has been in the business of making and selling somewhat similar whipstocks; has advertised extensively and exhibited them at shows, and prior to this suit had sold about 2,000 whipstocks. This suit for injunction and account of profits was filed Oct. 7, 1939. The issues were on the validity of the patent, infringement, and laches and estoppel as a bar to relief. The trial court found that the presumption of validity of the patent had not been overcome, but there was not infringement; and that it was unnecessary to determine the issue of laches and estoppel. The suit was dismissed. Getty alone has appealed, and only from that portion of the decree which adjudged non-infringement.

The infringement issue alone is directly for review, but the patent must be construed to determine it. In the oil well business a well may become obstructed or crooked. Instead of abandoning it, a long "window" may be cut in the side of the metal casing through which the drilling may be continued in a slightly altered direction. To this end a "whipstock" is inserted in the casing above the obstruction or crook, it being a hardened metal rod fitted into the casing, its upper portion tapering gradually to a thin wedge at the top. A milling head is then lowered into the well, which is forced against the side of the casing by the tapered whipstock, so that in rotating the head cuts the softer casing, and makes the desired window, through which the drilling may be continued. To cut the window straight the whipstock must be kept from slipping around itself. Some whipstocks are made with a square point or a winged end at the bottom to be driven into the bottom of the well. Some were cemented in. Getty did not invent the whipstock, but he devised a

means of "locking" it securely at any desired depth by the use of a wedge in a groove at the lower end, held away from the casing as the whipstock is lowered, but on hitting the bottom or the obstruction released by shearing a retaining pin and then driven upward in the tapering groove, so as to contact the casing on the side opposite to the taper on the top of the whipstock. The whipstock, in a modified form in which the wedge is not at once driven home, can, after release at the bottom, be drawn up to a desired point, the toothed wedge not being forced hard against the casing in travelling upward, but at the right place the whipstock is started downward when the wedge grips the casing, and on the whipstock being driven hard downward it is firmly held by the wedge, the upper tapered end being at the same time forced back against the casing so the milling head will not strike upon it. The shearing of another pin permits withdrawal of the means by which the whipstock was lowered and set.

Claims 3, 4, 5, 7 and 8, all much alike, are alleged to be infringed. The first three claim a described whipstock; the last two are expressly combination claims. All are exceedingly vague in themselves, and literally taken are very broad. Claim 3 is: "A whipstock for wells comprising an elongated body having a tapered portion providing a wedging face, wedging means carried by the lower portion of the body, means to bring said wedging means into action at will to lock the body against movement within the well casing." Claim 7 is: "A whipstock for wells comprising, in combination, an elongated body having a tapered portion extending throughout a major portion of the length thereof, a wedge carried by the lower portion of said body, means to prevent the premature action of said wedge, and means to drive said wedge to lock said body within a well casing at a predetermined location therein." The whipstock is old. The "wedging means" in Claim 3 becomes definitely "a wedge" in Claim 7. The "wedging face" in 3 becomes "a tapered portion" in 7. In neither is there any specification of the "means" mentioned to operate the wedge or prevent its premature action. Every possible means cannot be considered to be covered. That would be in effect to patent the use of a wedge. The claims can be made meaningful and sufficient only by saying the means meant are those set forth in the disclosure: a wedge driven up by striking the obstruction or pulled up by a spring, but the spring prevented from putting the wedge into action by a pin which must be sheared by dropping the tool against something at the bottom of the well. The general idea of using a blind wedge to tighten a rod in a tube is not patentable. It is a common device. The inventive novelty of the patent, assuming there is novelty and invention, must lie in the means disclosed for controlling and operating the wedge.

We agree with the district court that Kinzbach's whipstock, while it also employs a wedge at the bottom to tighten and lock it in place, uses a different means to control and operate the wedge. His spring pushing the wedge instead of one pulling it up is a mere equivalent; but the means for releasing the wedge is quite different and works differently and attains an additional result. Getty releases his wedge by lowering the whipstock all the way to the bottom and shearing a pin by the blow. Kinzbach's wedge is held back by a trigger pointing upwards, its end being in light contact with the casing as the whipstock goes downward. During downward motion nothing happens, but if the whipstock be drawn upwards, so soon as the trigger strikes a joint in the casing it catches in it and is forced back, the wedge is released and thrust by its spring into contact with the casing, and may by driving the whipstock downward again be locked in place. Kinzbach's tool does not have to go to the bottom, but may be stopped at any desired casing joint. The release apparatus is not a pin sheared by a downward blow, but a trigger operated by an upward pull. His whipstock, moreover, is not stiff, and with its upper tapered point pressed against the casing, but has a hinge, to permit the upper taper to be moved against or away from the casing. This last, however, is probably a difference not here important. Getty's claims are in reality all combination claims. The means they monopolize are only those disclosed. Kinzbach uses substantially different means operating differently. In a patent for a combination, each element must be used, or its mechanical equivalent. The omission of any element, or the substitution of another not a mere mechanical equivalent to accomplish the same result, avers infringement. Walker on Patents, § 349; Wichita Visible Gasoline Pump Co. v. Clear Vision Pump Co., 8 Cir., 19 F.2d 435 and cases cited.

Judgment affirmed.