**BLUMCRAFT OF PITTSBURGH, a Partnership consisting of Hyman Blum, et al., Plaintiff,**

v.

**ARCHITECTURAL ART MFG., INC. and Wenzel W. Thom, Defendants.**

Civ. A. No. W–4037.

United States District Court, D. Kansas.

Jan. 7, 1972.

James C. McConnon and Frank J. Benasutti of Paul & Paul, Philadelphia, Pa., Hershberger, Patterson, Jones & Thompson, Wichita, Kan., for plaintiff.

William F. Pielsticker, Wichita, Kan., Warren N. Williams, of Schmidt, Johnson, Hovey, Williams & Chase, Kansas City, Mo., for defendants.

## OPINION AND ORDER OF THE COURT SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THEIS, District Judge.

This case is presently before the Court on defendants' motion for summary judgment, based originally on a claim of res judicata and estoppel as a result of a decision of the Fourth Circuit Court of Appeals holding plaintiff's patents invalid, and subsequent action of the United States Supreme Court denying certiorari. See Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina, 407 F.2d 557 (1969), cert. den. 395 U.S. 961, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969). During the pendency of this action, the United States Supreme Court came down with a very cogent opinion by Mr. Justice White and a much-needed bulwark in the patent law of this country in the case of Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, et al, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Defendants now place total reliance on this case and plaintiff disputes such a position.

During the Court's reading and listening to the extended arguments in this case, he has become familiar with an apparent anomaly in patent law cases or a fixation of viewpoint by counsel in such cases regardless of which side of the controversy is represented, i. e., a tendency to resist any ruling of finality on either side as to definitive decision upon the validity of the patent. The learned patent counsel on both sides exhibited this eccentricity, but the position of plaintiff has been marked by an illusiveness, versatility, or metamorphosis hard to describe, but differing analogously in minute degree from a fishery biologist's attempt to grasp a live eel in algaed waters.

## FACTS OF THE CASE

This case arises from the complaint filed in this Court on August 7, 1968 by the plaintiff Blumcraft, charging Architectural Art and Wenzel W. Thom, its president and principal stockholder, with infringing plaintiff's patents and seeking both injunctive relief and damages.

Plaintiff, a legal entity as a partnership, is the legal owner and patentee of two patents designated as United States Letters Patent No. D–171,963, a design patent dated April 20, 1954, and No. 2,905,445, a mechanical patent dated September 22, 1959, for an invention in ornamental rail structures for use in building construction. It has its place of business in Pittsburgh, Pennsylvania. Defendant is a Wichita, Kansas, based corporation. This appears to be at least the third legal encounter between these parties—actual or covert. While both parties have most competent local counsel in this suit, the principal adversaries have been Mr. James C. McConnon, of a prominent Philadelphia patent firm, for the plaintiff, and Mr. Warren N. Williams, of a prominent Kansas City, Missouri patent firm. These lawyers have been long engaged in touché and counter-touché over the validity of the patents in issue.

In a case entitled Blumcraft of Pittsburgh v. United States, 372 F.2d 1014, 178 Ct.Cl. 798 (1967), originating before the Court of Claims in 1965, the Court of Claims held that the design patent No. D–171,963 was valid and infringed by the United States by its use of railing structures in certain public buildings constructed by the United States, and for which Blumcraft had not licensed their use. Plaintiff claims that

defendant, through its attorney Warren Williams, secretly advised, counselled and assisted the Department of Justice in defending the Court of Claims suit, and hence, defendant should be bound here by the decision in that case.

In the case of Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina, 286 F.Supp. 448 (D.S.Car. May 23, 1968), it was held that plaintiff's design patent No. D–171,963 was valid and infringed, and that its mechanical patent No. 2,905,445 was also valid and infringed. These rulings of the trial court were reversed by the Fourth Circuit Court of Appeals in February, 1969, and certiorari was denied by the Supreme Court in June, 1969, as referred to, supra, in the Court's introduction to this opinion. The essence of the Circuit's opinion was that both of plaintiff's patents were *invalid*.

The initial position taken by both of the present parties to this suit was that on the basis alone of a prior adjudication of a patent's invalidity in one judicial circuit of the United States did not preclude its continued and new litigation in the other circuits under the teaching of Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936), and the fallout from that opinion that unless the party sought to be bound by the certain patent suit judgment was a party defendant in the suit or in position to control the course of the litigation, though not a party, he could not be bound by it on the basis of res judicata or estoppel. As a result of this decision, this Court was persuaded to allow extensive discovery into the machinations and maneuverings of these parties and their counsel in the South Carolina case. While these proceedings were taking place, *Blonder-Tongue* burst upon the legal scene, apparently taking all patent counsel by surprise, and certainly in that case, eliciting equivocal positions by patent counsel for all adversaries.

## RULING OF THE COURT

Blumcraft is here doomed and the decision must be against it for two very valid reasons, viz., (1) it is bound by its original claims and assertions as to the nature, character and participation of the parties here in the South Carolina litigation, which assertions, for plaintiff's own good, the Court presumes to be true; (2) and most importantly, it is bound by the holding of *Blonder-Tongue* and its progeny.

## THE ADMISSIONS AND/OR CONTENTIONS OF THE PARTIES AS TO THE PARTICIPATION IN OR EFFECTIVENESS OF THE SOUTH CAROLINA SUIT

The complaint of plaintiff Blumcraft contained, inter alia, these allegations:

"14. Defendant ARCHITECTURAL ART MFG., INC. participated in and controlled the defense of the recent case of Blumcraft of Pittsburgh v. Citizens & Southern National Bank of South Carolina, et al, Civil Action No. 4168, in the District Court for the Western District of South Carolina. A copy of the decision of the Court is attached hereto as Exhibit A.

15. Defendant ARCHITECTURAL ART MFG., INC. participated in the control of the defense of the case of Blumcraft of Pittsburgh vs. The United States, 153 U.S.P.Q. 298 (Ct.Cl.1967). A copy of the decision of the Court is attached hereto as Exhibit B.

16. Judgment in the aforesaid action in the District Court for the Western District of South Carolina is binding on the defendant ARCHITECTURAL ART MFG., INC.

17. Judgment in the aforesaid action in the Court of Claims is

binding on the defendant AR-CHITECTURAL ART MFG., INC."

In their answer herein, the defendants made, inter alia, the following allegations:

"21.  The suit referred to in the complaint as Blumcraft of Pittsburgh v. Citizens & Southern National Bank of South Carolina, et al, Civil Action No. 4168, U. S. District Court for the Western District of South Carolina, now pending Appeal No. 17219 before the U. S. Court of Appeals for the Fourth Circuit, once the issue of liability presented therein has been finally adjudicated, will be res adjudicata as between and binding upon both plaintiff and defendant Architectural Art Mfg., Inc. as to the question of validity of the patents involved in this action and the question of infringement of said patents by certain structure at one time made and sold by defendant Architectural Art Mfg., Inc. as its 'Clean-Line' model railings; but such final adjudication has not yet occurred, wherefore this action will be controlled and completely barred by res adjudicata if and when said patents are finally adjudicated to be invalid in the aforesaid suit now pending on appeal before the U. S. Court of Appeals for the Fourth Circuit and will be controlled and barred as to the 'Clean-Line' model railings of defendant Architectural Art Mfg., Inc. if and when said structures are finally adjudicated not to infringe said patents in the aforesaid suit now pending on appeal before the U. S. Court of Appeals for the Fourth Circuit.

22.  Although final adjudication of the aforesaid suit will be binding upon both plaintiff and defendant Architectural Art Mfg., Inc. on certain important and possibly herein dispositive issues, as set forth in Paragraph 21 of this Answer, and although defendant Architectural Art Mfg., Inc. has and is controlling the defense of said suit and the appeal now pending therein, neither of the defendants in this action was a party to said suit nor subject to any liability therein to plaintiff for any damages that might be awarded therein."

It thus plainly appears from the lips of the parties how each construed and understood the participation of each and the effect thereof in the South Carolina litigation. The Court construes the admissions of both parties in their pleadings to be identical in language, scope and purport, and accepts them as binding stipulations of fact, except, of course, as to plaintiff's construction of the participation of defendants and the effect of the Court of Claims suit in Paragraphs 15 and 17 of its complaint, which is placed in its proper perspective by Justice White in his lucid and long-needed opinion in *Blonder-Tongue.* This finding of the Court is further buttressed by the finding of District Judge Simons, of the federal court in South Carolina, who states in his opinion at page 450 of 286 F.Supp.:

"Architectural Arts has controlled and conducted the defense of this suit but is not a party to this action for the reasons stated in this Court's previous order."

## FINALITY OF BLONDER–TONGUE

■ On May 3, 1971, the Supreme Court came down with a hallmark case in the patent field in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, et al., supra. A careful reading of that opinion reveals a crystal clear holding that a court deter-

mination of patent invalidity will operate as an estoppel in a subsequent suit by the same patentee against a different defendant so long as the patentee has had one full and fair opportunity to litigate the merits of his patent.

Judge Doyle, in the recent Tenth Circuit case of Boutell v. Volk, 449 F.2d 673, decided October 22, 1971, further clarifies some misapprehensions, of counsel in other cases and plaintiff's counsel in this case, of the import of *Blonder-Tongue* when he states:

> "The *Blonder-Tongue* opinion reviewed with great care the mutuality requirement as it had existed under the 1936 decision in Triplett v. Lowell, 297 U.S. 638, 642, 56 S.Ct. 645, 80 L. Ed. 949, [29 USPQ 1, 3] (1936). *Triplett* had conditioned the plea of res judicata on there being total mutuality as to the parties. Thus, all parties involved had to have been actual parties or privy to actual parties in order for estoppel by judgment to come into play. The result was that a patentee whose patent has been held invalid in one court was free to pursue infringement suits in other districts in a quest for a judgment of validity. *Blonder-Tongue* in some degree stopped this multiplicity of actions in various districts and circuits by simply holding that adjudication of *invalidity* of a patent following a full and fair hearing in which the defender of the patent had an adequate opportunity to present his case in support of validity would be final. The patentee against whom the judgment has been entered is barred from asserting in another action that the patent is valid."

Justice White pinpoints the type of suits in which estoppel is a defense against a patentee when he says:

> "Even conceding the extreme intricacy of some patent cases, we should keep firmly in mind that we are considering the situation where the patentee was plaintiff in the prior suit and chose to litigate at that time and place. Presumably he was prepared to litigate and to litigate to the finish against the defendant there involved. Patent litigation characteristically proceeds with some deliberation and with the avenues for discovery available under the present rules of procedure, there is no reason to suppose that plaintiff patentees would face either surprise or unusual difficulties in getting all relevant and probative evidence before the court in the first litigation.

> "Moreover, we do not suggest, without legislative guidance, that a plea of estoppel by an infringement or royalty suit defendant must automatically be accepted once the defendant in support of his plea identifies the issue in suit as the identical question finally decided against the patentee or one of his privies in previous litigation. Rather, the patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.' "

Closely following the above language, Justice White clearly elucidates the criteria for judicial examination in subsequent suits by or against a patentee who had sustained a prior adjudication of the patent's invalidity:

> "Determining whether a patentee has had a full and fair chance to litigate the validity of his patent in an earlier case is of necessity not a simple matter. In addition to the considerations of choice of forum and incentive to litigate mentioned above, certain other factors immediately emerge. For example, if the issue is nonobviousness, appropriate inquiries would be whether the first validity determination purported to employ the

standards announced in Graham v. John Deere Co., supra; whether the opinions filed by the District Court and the reviewing court, if any, indicate that the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit; and whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation. But as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity.

"We are not persuaded, therefore, that the *Triplett* rule, as it was formulated, is essential to effectuate the purposes of the patent system or is an indispensable or even an effective safeguard against faulty trials and judgments."

■■ One fact indisputably emerges which plaintiff's counsel misconstrues in their strong reliance on the Court of Claims case, and their contention that it is to be weighted heavier for plaintiff since it was the first decision, or at least be balanced off against the use of the South Carolina case against it. This is the fact that *Blonder-Tongue*, as expounded by its own author and other judicial commentators on its efficacy, including Judge Doyle in Boutell v. Volk, and Judge Hoffman in applying *Blonder-Tongue* on remand, applies only to *judgments of invalidity*—not to judgments of validity. Such an application of *Blonder-Tongue* here eliminates the Court of Claims case and emphasizes the estoppel factors of the Fourth Circuit case *unless* it can be said that the Court of Claims case was res judicata. Obviously, it was not—since the claim of plaintiff is only that defendants' counsel Williams advised, consorted with, and

gave aid and comfort to the Government attorneys—and, it should be noted that the United States was the sole defendant.

All the pertinent facts are before this Court relative to the scope and issues of the South Carolina case. There, this plaintiff was the aggressor, the attacker, "choosing his own forum and with the incentive to litigate." One of the principal issues urged by defendants in that suit was obviousness. Perusal of the opinions of both District Judge Simons and Circuit Judge Butzner indicate a familiarity with and application of the standards announced in Graham v. John Deere, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, to the evidence in the case. The available records nowhere indicate that the patentee Blumcraft was deprived either of crucial evidence or witnesses in the District Court, nor was there a claim by plaintiff that such a detriment occurred. This Court's whole impression from examining the exhibits and record in the South Carolina case is one of full proof and effort on both sides, and a studied and considered conclusion by three learned circuit judges, without division, of the patents' invalidity. This is a far cry from the necessary finding by this Court that either court in the South Carolina case "wholly failed to grasp the technical subject matter."

■ Plaintiff claims a significant difference exists between the issues and scope of the South Carolina case and the issues and scope of the one at bar, in that the mechanical patent No. 2,905,445, in this case, has all six claims contested, whereas only claims one and three were at issue in South Carolina in addition to the design patent. This sort of claim was put at rest by Judge Hoffman on the remand of *Blonder-Tongue*, where it was pointed out the judgment in the first court held the whole patents invalid, even though all of the claims were not controverted in the lawsuit. In

the case at bar, when one examines the opinions in the South Carolina case, both in the trial and appellate courts, the final judgments referred to the validity or invalidity of the whole patents. Moreover, the discussion by the appellate court of the obviousness of plaintiff's mechanical patent indicates their reference and contemplation of it as a whole as to rails, posts, and the clamp, bolts and notches for holding them in place. No separability or savings clause as to any claims is indicated by the Fourth Circuit. The judgment of obviousness must be deemed to relate to the entire mechanical patent.

In sum, Blumcraft must lose here on the basis of res judicata, i. e., that the issues decided in the previous litigation (the South Carolina case) were identical with the ones extant here, there was a final judgment against it on the merits in the Fourth Circuit, plaintiff is the party against whom the defense of res judicata is asserted by the defendants here, and defendants were in privity with the ultimate prevailing parties in the South Carolina litigation.

Also, plaintiff must lose on strength of the holding in *Blonder-Tongue* that it is estopped in this case to assert the validity of its patents which were previously adjudged invalid in a case in which it had a fair and full opportunity to try out the issue of validity. It is hornbook law that an invalid patent cannot be infringed.

In accordance with the expressions, findings and legal conclusions of the foregoing opinion, it follows that summary judgment be, and the same is hereby, entered for defendants Architectural Art Mfg., Inc., and Wenzel W. Thom, against plaintiff Blumcraft of Pittsburgh, a partnership; and that the costs of this action be, and the same are hereby, assessed against the plaintiff. No separate additional journal entry of judgment shall be required or is necessary herein.

It is so ordered.