**BLUMCRAFT OF PITTSBURGH, Plaintiff-Appellant,**

v.

**KAWNEER COMPANY, INC., et al., Defendants-Appellees.**

No. 72-3428.

United States Court of Appeals, Fifth Circuit.

July 20, 1973.

See also D.C., 341 F.Supp. 1018.

Edwin G. Russell, Jr., Atlanta, Ga., James C. McConnon, Frank J. Benasutti, Philadelphia, Pa., J. Timothy White, Atlanta, Ga., for plaintiff-appellant.

Joseph B. Brennan, Bennett L. Kight, Atlanta, Ga., Richard D. Mason, Andrew J. Bootz, Joseph Krieger, Robert L. Rohrback, Chicago, Ill., William S. White, Niles, Mich., Edward L. Greenblatt, LeRoy C. Hobbs, Robert Carpenter, Atlanta, Ga., for defendants-appellees.

Before GOLDBERG, CLARK and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

In the 1971 case of Blonder-Tongue Laboratories v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, the Supreme Court partially overruled a long line of cases [1] and held that collateral estoppel could be applied in patent infringement cases, regardless of mutuality as long as the plaintiff had a "full and fair opportunity" to litigate the validity of his patent in a prior action and was unsuccessful. In the case *sub judice* we are asked to decide whether the collateral estoppel made possible by *Blonder-Tongue* attaches where a prior judicial finding of invalidity which the defendant asserts as an estoppel, was preceded by an earlier finding of validity. The court below somewhat reluctantly decided that collateral estoppel was required and on that basis granted defendant's motion for summary judgment. We affirm.

I.  Factual and Procedural
Background

In June of 1969 plaintiff-appellant, Blumcraft of Pittsburgh, brought this suit for patent infringement against the defendants-appellees, Kawneer Company, Inc., Breman Steel Company, Inc., and A. R. Winter Company, Inc., [hereinafter "Kawneer"]. At issue is the validity and infringement of design patent No. D-171,963 [hereinafter "Blum patent"] which was issued to Louis Blum by the Patent Office on April 20, 1954.

1.  *E. g.*, Triplett v. Lowell, 1936, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949.

The patent covered a new ornamental railing design developed by Blum.

## A. *Prior Suits*

This suit is not the first time the validity of the Blum patent has been placed before the federal courts and the present appeal can be understood only after a review of the earlier Blumcraft litigation. Two previous suits filed by Blumcraft for infringement of the Blum patent, one in the Court of Claims and one in the Fourth Circuit, are directly involved in the instant appeal. A third action filed in the Tenth Circuit is indirectly involved. A brief history of the three prior suits in the order of their final judgments is necessary.

1. *Court of Claims.* [1] On February 12, 1963, Blumcraft filed a claim against the federal government in the Court of Claims for infringement of the Blum patent. After extensive discovery, the case was tried before a United States Trial Commissioner who decided that the Blum patent was valid and that it had been infringed by certain railings used by the Government.[2] The case was then submitted by the parties to the Court of Claims under a stipulation which limited the amount of recovery and in which the Government agreed not to take exception to any of the Trial Commissioner's findings. On February 17, 1967, the Court of Claims adopted the findings of the Trial Commissioner and held the patent valid and infringed.[3] Blumcraft of Pittsburgh v. United States, 1967, 372 F.2d 1014, 178 Ct.Cl. 798.

2. *Fourth Circuit.* On September 27, 1962, several months *prior* to the filing of the Court of Claims suit, Blumcraft filed its first suit for infringement of the Blum patent in the United States District Court in South Carolina against numerous defendants (none of whom are involved in the instant suit) who were using certain railings manufactured by Architectural Arts, Inc. The case was tried in May of 1967, after the Court of Claims decision had been rendered and upon essentially the same evidence as was proffered in the Court of Claims. After a full trial, in May, 1968, the district court decided that the Blum patent was valid and had been infringed.[4] Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina, D.S.C.1968, 286 F.Supp. 448.

On appeal, the Fourth Circuit reversed. Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina, 4 Cir. 1969, 407 F.2d 557. Applying the relevant standards as expounded in Graham v. John Deere Co., 1966, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed. 2d 545, the court found that the Blum design was "obvious" in terms of the prior art and that therefore the patent was invalid. Despite the obvious conflict between the Fourth Circuit and the Court of Claims as to the validity of the Blum patent, the Supreme Court denied Blumcraft's repeated petitions for cer-

---

2. There is some dispute as to whether the railings at issue in the Court of Claims suit were manufactured by Kawneer and whether Kawneer should be estopped from raising collateral estoppel in this suit because it declined an invitation to participate in the Court of Claims litigation. Regardless of who manufactured those particular railings, Kawneer had no obligation to join the litigation; and since Kawneer could not have controlled the defense of the Court of Claims suit, even if it had participated, the employment of equitable sanctions against Kawneer for failing to participate would be most inequitable. Without deciding whether Blumcraft's equitable counter to collateral estoppel could ever be interposed, it is here rejected on the facts.

3. The Court explicitly noted that "Defendant has filed no opposition or response to plaintiff's motion for judgment on the issue of liability. . . . " 372 F.2d at 1015.

4. The district court acknowledged the existence of the Court of Claims decision but explicitly stated that it was reaching "its own independent determination that the plaintiff's design patent was valid." 286 F.Supp. at 456.

tiorari. 395 U.S. 961, 89 S.Ct. 2103, 23 L.Ed.2d 747, 396 U.S. 870, 90 S.Ct. 39, 24 L.Ed.2d 125, 396 U.S. 949, 90 S.Ct 369, 24 L.Ed.2d 254 (1969).

3. *Tenth Circuit.* In August, 1968, prior to final judgment in the Fourth Circuit case, Blumcraft brought suit in the United States District Court in Kansas claiming that the defendant, Architectural Art Manufacturing Company, had infringed the Blum patent.[5] After the Fourth Circuit rendered its decision declaring the Blum patent invalid, defendants moved the district court for summary judgment on the grounds of res judicata.[6] Before this motion could be ruled on, however, the Supreme Court issued its decision in *Blonder-Tongue, supra,* and the defendants amended their summary judgment motion to include a plea of collateral estoppel based on the Fourth Circuit's ruling. The district court granted judgment against Blumcraft on two grounds:

> "Blumcraft is here doomed and the decision must be against it for two very valid reasons, viz., (1) it is bound by its original claims and assertions as to the nature, character and participation of the parties here in the South Carolina litigation, which assertions, for plaintiff's own good, the Court presumes to be true; (2) and most importantly, it is bound by the holding of *Blonder-Tongue* and its progeny."

Blumcraft of Pittsburgh v. Architectural Art Mfg. Co., Inc., D.Kan., 1972, 337 F.Supp. 853, 855. On appeal the Tenth Circuit summarily affirmed "for the reasons stated by the district court." 459 F.2d 482.

### B. *The Suit at Bar*

This suit was filed by Blumcraft in the United States District Court in

Georgia against Kawneer in June, 1969, after both the Court of Claims' decision of validity and the Fourth Circuit's decision of invalidity. Defendants' first motion for summary judgment based on collateral estoppel was denied by the district court in June of 1970, 318 F.Supp. 1399, citing Triplett v. Lowell, 1936, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949, on the ground that lack of mutuality barred the application of collateral estoppel.[7]

Upon motion of defendants, in February, 1971, the court below stayed its prior order pending the ruling by the Supreme Court in *Blonder-Tongue.* In May, 1971, the Supreme Court decided *Blonder-Tongue,* which partially overruled Triplett v. Lowell and permitted collateral estoppel in patent cases regardless of the absence of mutuality. Supplemental briefs were then filed and on November 16, 1971, the district court again denied Kawneer's motion for summary judgment, 341 F.Supp. 1018. The court concluded its order as follows:

> "As was stated in *Blonder-Tongue,* 'no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper ruling on estoppel pleas. In the end, decision necessarily rests on the trial courts' sense of justice and equity.' At present, there are two conflicting decisions construing the validity of the patent in question. In the interest of justice, this court cannot place more weight on the decision of the Court of Appeals than on the decision of the Court of Claims in ruling on the defendants' plea for estoppel."

Upon a repeated motion by Kawneer, on March 27, 1972, the district court again denied summary judgment, stating that the existence of the prior Court of Claims adjudication of validity distin-

---

5. Architectural Art was the manufacturer in control of the defense in the South Carolina and Fourth Circuit cases.

6. The claim of res judicata was based upon Architectural Art's assertion that it had been the true party in interest against

Blumcraft in the Fourth Circuit and that therefore both parties were bound by that judgment.

7. This Court denied an interlocutory appeal from that motion, Aug. 19, 1970, Misc. No. 1773.

guished *Blonder-Tongue* and precluded the application of collateral estoppel.[8] On May 24, 1972, the Tenth Circuit rendered its opinion, discussed *supra*, affirming the Kansas district court's application of collateral estoppel against Blumcraft. On September 22, 1972, in response to a renewed motion based on the Tenth Circuit's action, the court below vacated its earlier orders and granted defendants' motion for summary judgment. In its order the court stated:

> "While the court is not fully convinced that its analysis of *Blonder-Tongue, supra,* as set out in the November and March orders, was incorrect, it must and does give precedential consideration to the above holding of the Tenth Circuit Court of Appeals as it applies to the issue of collateral estoppel in this case."

Blumcraft appeals from the entry of summary judgment.

## II.  The Law

The position asserted by Blumcraft and initially accepted by the court below is that *Blonder-Tongue* left broad discretion with the district court to determine whether it would be "just and equitable" to apply collateral estoppel in a given case. Factually, *Blonder-Tongue* involved a situation in which there was only one prior finding of invalidity. Blumcraft argues that here, where there is a finding of validity prior to the finding of invalidity, it would be "inequitable" to estop the third action. Implicit in this argument is the assertion that since one court has found the patent val-

id and one court has found it invalid, the correctness of the second decision is open to question and it would therefore be unjust to preclude the patentee from further litigation.

██  While it is true that the "correctness" of the Fourth Circuit ruling of invalidity is brought into question by the existence of the prior inconsistent determination in the Court of Claims,[9] this fact alone is not sufficient to trigger the discretion left to the district court in *Blonder-Tongue*. *Blonder-Tongue* predicated the application of collateral estoppel not on whether the prior finding of invalidity was "correct" but rather on whether the plaintiff had "a full and fair opportunity to litigate" in the prior suit asserted as a bar. The escape hatch from estoppel left to a plaintiff by the Supreme Court was as follows:

> "Moreover, we do not suggest, without legislative guidance, that a plea of estoppel by an infringement or royalty suit defendant must automatically be accepted once the defendant in support of his plea identifies the issue in suit as the identical question finally decided against the patentee or one of his privies in previous litigation. Rather, the patentee-plaintiff must be permitted to demonstrate, if he can, that he did not have 'a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.' Eisel v. Columbia Packing Co. 181 F.Supp. 298, 301 (Mass.1960). This element in the estoppel decision will comprehend, we believe, the im-

8. Despite the district court's certificate under 28 U.S.C. § 1292(b), on May 4, 1972, this Court again denied leave to file an interlocutory appeal. Misc. No. 2407.

9. Appellees' contention that the Court of Claims' ruling is not of "equal stature" with the Fourth Circuit ruling because the Government did not oppose the Trial Commissioner's findings before the Court creates an added dimension to the problem *sub judice* which we need not encounter. The estoppel sanctioned by *Blonder-Tongue* operates only *against* a plaintiff

and does not apply to prior findings of validity. *See* Boutell v. Volk, 10 Cir. 1971, 449 F.2d 673; Philips Electronic and Pharmaceutical Ind. Corp. v. Thermal Electronics Ind. Inc., 3 Cir. 1971, 450 F.2d 1164. We therefore need not examine whether the Blumcraft patent was fully and fairly litigated before the Court of Claims. Inasmuch as collateral estoppel would apply regardless of the finding of validity in the Court of Claims litigation, under our reading of *Blonder-Tongue*, the vigor of the Government's performance before the Court of Claims is not relevant to our disposition.

portant concerns about the complexity of patent litigation and the posited hazard that the prior proceedings were seriously defective.

"Determining whether a patentee has had a full and fair chance to litigate the validity of his patent in an earlier case is of necessity not a simple matter. In addition to the considerations of choice of forum and incentive to litigate mentioned above, certain other factors immediately emerge. For example, if the issue is nonobviousness, appropriate inquiries would be whether the first validity determination purported to employ the standards announced in Graham v. John Deere Co., supra; whether the opinions filed by the District Court and the reviewing court, if any, indicate that the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit; and whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation."

402 U.S. at 332–333, 91 S.Ct. at 1445, 28 L.Ed.2d 788.

At the conclusion of the above passage outlining the parameters of "full and fair opportunity," the Court stated:

"But as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity."

402 U.S. at 333–334, 91 S.Ct. at 1445. Blumcraft argues that the above mentioned "sense of justice and equity" gave the court below the discretion to deny estoppel in this case. We disagree. the only discretion left to the district court's "sense of equity and justice" by *Blonder-Tongue* is in the determination of whether the plaintiff had a full and fair opportunity to litigate in the prior suit finding invalidity. The above passage relied on by Blumcraft must be read in the context of the paragraph within which it appears.[10]

Although many factors enter into the determination of whether the plaintiff had a full and fair opportunity to litigate in the prior suit, it is clear that Blumcraft has not alleged and in fact could not allege that the Fourth Circuit suit was not fully and fairly litigated.[11] The Fourth Circuit judgment met every criteria for estoppel articulated by *Blonder-Tongue, see also* Monsanto Co. v. Dawson Chemical Co., 5 Cir. 1971, 443 F.2d 1035, cert. denied, 1972, 405 U.S. 974, 92

10. *Compare* Technograph Printed Circuits, Ltd. v. Martin-Marietta Corp., 4 Cir. 1973, 474 F.2d 798, where the Fourth Circuit arguably treated the "full and fair opportunity" issue as separate from the "justice and equity" determination. *See also* Bourns, Inc. v. Allen-Bradley Co., N.D.Ill., 1972, 348 F.Supp. 554.

11. In finding that Blumcraft had a full and fair opportunity to litigate the Fourth Circuit suit, the district court in the Tenth Circuit case noted:

"All the pertinent facts are before this Court relative to the scope and issues of the South Carolina case. There, this plaintiff was the aggressor, the attacker, 'choosing his own forum and with the incentive to litigate.' One of the principal issues urged by defendants in that suit was obviousness. Perusal of the opinions of both District Judge Simons and Circuit Judge Butzner indicate a familiarity with and ap-

plication of the standards announced in Graham v. John Deere, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, to the evidence in the case. The available records nowhere indicate that the patentee Blumcraft was deprived either of crucial evidence or witnesses in the District Court, nor was there a claim by plaintiff that such a detriment occurred. This Court's whole impression from examining the exhibits and record in the South Carolina case is one of full proof and effort on both sides, and a studied and considered conclusion by three learned circuit judges, without division, of the patents' invalidity. This is a far cry from the necessary finding by this Court that either court in the South Carolina case 'wholly failed to grasp the technical subject matter.'" Blumcraft of Pittsburgh v. Architectural Art Mfg., Inc., D.Kan., 1972, 337 F.Supp. 853, 858, aff'd, 10 Cir. 1972, 459 F.2d 482.

S.Ct. 1191, 31 L.Ed.2d 248 and, although not necessary to an estoppel, it is instructive to note that the Fourth Circuit suit was the final judgment from the forum first chosen by Blumcraft to litigate its patent. *See generally*, Smith, The Collateral Estoppel Effect of a Prior Judgment of Patent Invalidity: Blonder-Tongue Revisited (part I), 55 J. of the Patent Off. Soc. 285 (1973).

■ The fact that a prior inconsistent ruling of validity raises a question as to the correctness of the invalidity determination does not create an exception to *Blonder-Tongue* and in fact is fully supported by the facts in *Blonder-Tongue*. In *Blonder-Tongue* the Eighth Circuit first ruled the patent invalid and thereafter the Seventh Circuit, on the basis of an independent analysis, affirmed the Illinois district court's ruling that the patent was valid. Faced with these obviously inconsistent determinations, the Supreme Court nevertheless ruled that the earlier judgment of invalidity could bind the later suit, regardless of which was "correct." Although technically distinguishable from the present case, the fact that the Supreme Court applied estoppel without regard to the "correctness" of the first decision mandates our decision that Blumcraft must allege more than just the possibility of being estopped by an incorrect decision before the district court's "sense of justice and equity" comes into play. *See also* Monsanto Co. v. Dawson Chemical Co., *supra*. As the Seventh Circuit noted in affirming the application of estoppel on remand in *Blonder-Tongue*, despite the fact that it was counter to its earlier finding of validity:

"Even if those courts [in the prior case finding invalidity] erred in the reasoning challenged by plaintiff, we are confident that such error would not be a defect of the magnitude contemplated by the Supreme Court as a reason why the court in the second action should deny the effect of estoppel to the earlier judgment."
University of Illinois Foundation v. Blonder-Tongue Laboratories, Inc., 7 Cir. 1972, 465 F.2d 380, 381, aff'g, N.D. Ill.1971, 334 F.Supp. 47, cert. denied, 1972, 409 U.S. 1061, 93 S.Ct. 559, 34 L. Ed.2d 513.

Blumcraft also questions the wisdom of permitting the application of collateral estoppel in infringement cases involving design patents. Apparently the Circuits have taken somewhat conflicting approaches toward design patentability and the Supreme Court has shown a consistent reluctance to resolve these conflicts. Again, our answer is that *Blonder-Tongue* was not concerned with "correctness." The presence of conflicting circuit court determinations in *Blonder-Tongue* persuasively shows that the possibility of one circuit being bound by another circuit's differing approach is not directly material. We are unable to find or infer any exception in *Blonder-Tongue* for design patent cases.

We are not blind to the potential "problems" inherent in our decision,[12] but we believe that through the proper application of *Blonder-Tongue* these problems can be satisfactorily resolved. For instance, under our ruling today it would be technically possible to apply collateral estoppel where a prior finding of invalidity was preceded by several rather than by just one finding of validity. In such instances there would be a red flag warning a court to apply the full and fair criteria very carefully to determine if the court finding the patent invalid had adequately comprehended and applied the appropriate substantive standards. Ultimately, of course, there is appeal to the Supreme Court from the finding of invalidity; and, while we recognize the apparent difficulty in obtaining relief through this channel, we cannot predicate an exception to a rule mandated by the Supreme Court on the

12. *See generally*, Note, 50 Texas L.Rev. 559, 563–66 (1972); Note 26 S.W.L.J. 451, 461 (1972): Comment, Class Actions in Suits for Suits for Patent Infringement in Light of Blonder-Tongue, 13 B.C.Ind. & Comm.L.R. 1473 (1972).

basis of our assessment of the Court's future performance. In any event, the "injustice" to the patentee in such cases is no greater and in fact is arguably less than in a situation such as *Blonder-Tongue*, where the determination of invalidity came prior to *any* validity rulings. In *Blonder-Tongue*, despite the explicit fact that, absent the application of collateral estoppel, further *successful* suits on the patent would have been possible after the first unsuccessful suit, the Supreme Court sanctioned, and ultimately the Seventh Circuit allowed collateral estoppel to be applied. It follows that the fact of a *prior* successful suit, as here, should not, in itself, be permitted to undermine the numerous policy reasons expounded in *Blonder-Tongue* in favor of applying estoppel.

We also recognize the inevitable problems that can arise in determining the effect of the determination of invalidity upon a prior judgment of validity if collateral estoppel is applied to all later suits. These problems are not presently before us, but we do note that the federal courts have had little difficulty in formulating appropriate solutions. *E.g.*, Troxel Mfg. Co. v. Schwinn Bicycle Co., 6 Cir. 1972, 465 F.2d 1253; cf. Lear, Inc. v. Atkins, 1969, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610.

The only other appellate court to pass on the problem before us is the Tenth Circuit in its *Blumcraft* case which involved the same plaintiff, the same patent, and the same prior inconsistent validity determinations. That court affirmed the district court's ruling that collateral estoppel was applicable. In following the Tenth Circuit the court below wisely, albeit reluctantly, abandoned its earlier determination that it had the discretion to deny estoppel despite the existence of a full and fair opportunity to litigate in the prior suit. Although Blumcraft attempts to distinguish the Tenth Circuit suit, it is clear that the Kansas district court opinion, adopted by the Tenth Circuit, did rule directly on the point at issue here.

*Blonder-Tongue* did not throw merely a jab at the multiplicity of patent litigation; rather, it intended a knockout blow through the doctrine of collateral estoppel so that any time a patent was found invalid in a fair fight with a knowledgeable referee, the courts could count ten and the patent holder could no longer maintain that he was champion. In partially overruling Triplett v. Lowell, the Court decided that the numerous factors favoring estoppel in patent cases far outweighed the unavoidable potential for a patentee to be estopped from future litigation as a result of a possibly "incorrect" decision. This is, however, the nature of our entire judicial process Whenever any judgment achieves the imprimatur of finality, it may potentially be asserted against the unsuccessful litigant either by *res judicata* or through collateral estoppel as a shield to future litigation involving the same questions and the correctness of the final judgment cannot, as a rule, be challenged.

If litigation were costless, both to the litigants and to society, it might be desirable never to allow collateral estoppel to preclude a new lawsuit. But as with most mortal endeavors, litigation is not so blessed. Collateral estoppel is a rule of repose and as such it is not always pure or just or even cognitive. Efficiency and economy in judicial administration have their places in our judicial schema. *Blonder-Tongue* does require as a condition precedent to its invocation at least one round of pristine purity. In our case we cannot say that such an encounter has not taken place. Blumcraft had a full and fair opportunity to litigate the validity of its patent in a forum of its own choosing, and the patent was declared invalid. Under both the letter and spirit of the Supreme Court's ruling in *Blonder-Tongue*, the district court was correct in applying collateral estoppel and in granting defendants' motion for summary judgment.

Affirmed.