**GENERAL PLYWOOD CORPORATION,**
Plaintiff,

v.

**GEORGIA–PACIFIC CORPORATION,**
Defendant.

**Civ. A. No. 1127.**

United States District Court,
S. D. Georgia,
Savannah Division.

July 24, 1973.

W. Spencer Connerat, Jr., Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, Savannah, Ga., John A. Blair, Harness, Dickey & Pierce, Detroit, Mich., for plaintiff.

Thomas H. Gignilliat, Gignilliat & Abbott, Savannah, Ga., John Vaughan Groner, Fish, Richardson & Neave, New York City, for defendant.

LAWRENCE, Chief Judge.

## ORDER ON PLAINTIFF'S OBJECTIONS TO REPORT OF SPECIAL MASTER

### 1. *History of Litigation*

This canescent patent case was filed in 1959 and is now going on fourteen years old.

On December 9, 1959, General Plywood Corporation filed a complaint charging Georgia-Pacific Corporation (a) with infringement of United States patent No. 2,827,935 and (b) with violation of an alleged confidential disclosure of the patented process before the patent issued to General Plywood on March 25, 1958. Injunctive relief, accounting for profits, treble damages and attorney's fees were sought.

Georgia-Pacific filed an answer and counterclaim denying infringement and asserting invalidity of the patent.[1] It denied any use of the process disclosed by General Plywood. Defendant prayed that the complaint be dismissed and asked for declaratory and injunctive and other relief.

The patent relied on by General Plywood discloses and claims "certain new and useful improvements in wood products and in a method of and apparatus for treating wood surfaces." The principal object of the patent, as stated in the application of George E. Alexander, is "to provide a novel wood surface treating process which can be simply and inexpensively carried out and which results in the substantial improvement of that surface in one or more respects such as increased hardness, smoothness and reflectivity and reduced porosity and absorbency." "Microseal" is the name given to the process by General Plywood.

Between 1959 and November, 1961, voluminous depositions were taken in this case. At that time Judge Scarlett appointed John E. Simpson as Special Master with authority to pass upon all questions of law and fact.

Shortly thereafter, proceedings in the case were stayed by agreement of the parties pending determination of the same issues in United States Plywood Corporation v. General Plywood Corporation in the United States District Court for the Western District of Kentucky. In that litigation United States Plywood had sought a declaratory judgment as to the validity of the patent issued in 1958 to George E. Alexander which was owned by General Plywood under an assignment from the inventor. After a lengthy trial the District Judge, sitting without a jury, ruled that the Alexander patent was valid but not infringed. The Court said that all of the evidence from which infringement could be inferred involved the use of 8/0, 9/0 and 10/0 abrasives or sandpaper. "There is no proof that [United States Plywood] was using cork or non-metallic abrasives in any of the accused operations; hence, there is no foundation upon which an infringement could be based." 230 F.Supp. 831 at 836.

On appeal, the ruling was affirmed in 1966 by the Sixth Circuit. It pointed out that infringement is generally a question of fact and that the finding below was not "clearly erroneous." The Court of Appeals noted that "the 10/0 sanding employed by United States Plywood did remove significant amounts of

---

1. By agreement of the parties the validity issue is not involved in this litigation.

stock" and pointed out that observers "testified to visible dust and the necessity of dust collectors on the 'Micro-Fine' process where General Plywood contends such were not necessary in microsealing." United States Plywood Corporation v. General Plywood Corporation, 370 F.2d 500 (1966); cert. den. 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71.

As happens on occasion with the Patent Bar when a stay is granted in order to await a decision in another court the result of which is represented as important or even determinative, things did not turn out that way. Five years after the stay of proceedings General Plywood did not agree that the Sixth Circuit decision had any effect in the present litigation.[2]

Early in 1968 this case came out of hibernation. Georgia-Pacific moved for summary judgment on the non-infringement issue contending that the process used by it was exactly the same as that held not to infringe in the litigation in Kentucky between United States Plywood and General Plywood.

The Special Master held a hearing on the Motion for Summary Judgment April 9–11, 1969. Briefs and proposed Findings of Fact and Conclusions of Law were subsequently filed. After Mr. Simpson submitted his proposed findings and conclusions to the parties General Plywood asked for a hearing as to "newly discovered evidence." The request was granted and further evidence (260 pages of it) was received in September, 1970. The hearing included demonstrations by way of comparisons made on test panels between Georgia-Pacific's 10/0 "sanding" and General Plywood's 10/0 "Microsealing" processes.

## 2. The Patent Claims

General Plywood's patent 2,827,935 discloses and claims a process for treating the surface of plywood panels or doors to provide a glossy, relatively non-porous or densified surface. "Sanding" (use of sandpaper) is recognized in the patent and was acknowledged to the Patent Office to be well known in the prior art. Plaintiff contends that its patented process differs from a "sanding" operation in that a relatively nonabrasive frictional rubbing belt is used to soften and densify the wood at its surface. The accused process uses "a paper belt having a coat of aluminum oxide particles bonded to its surface, such particles being partially embedded in the bonding material, the grit having a degree of fineness of 10/0." Finding No. 10. The belt represents "a coated abrasive, i. e., 'sandpaper'." Finding No. 26.

■ The core of the controversy appears to be whether such a belt is a "relatively nonabrasive" friction medium or rubbing surface as required by claims 1 to 11 or the "unabrasive" surface which is prescribed in claims 12 to 18 of the patent. If the process and rubbing sur-

2. There is no question that General Plywood is relitigating its claim of infringement. However, defendant did not plead collateral estoppel. That doctrine is apparently applied only to a prior finding in another jurisdiction involving the validity or non-validity of the patent at issue rather than infringement. See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788. It has been called "a crystal clear holding that a court determination of patent invalidity will operate as an estoppel in a subsequent suit by the same patentee against a different defendant so long as the patentee has had one full and fair opportunity to litigate the merits of his patent." Blumcraft of Pittsburgh v. Architectural Art Mfg., Inc., 337 F.Supp. 853, 856–857, aff'd 459 F.2d 482 (10th Cir.). See also Blumcraft of Pittsburgh v. Kawneer Company, Inc. et al. 175 USPQ 412 (N.D.Ga.); aff'd. 7/20/73. See 482 F.2d 542 (5th Cir.). "Blonder-Tongue did not throw merely a jab at the multiplicity of patent litigation; rather, it intended a knockout blow through the doctrine of collateral estoppel so that any time a patent was found invalid in a fair fight with a knowledgeable referee, the courts could count ten and the patent holder could no longer maintain that he was champion." Goldberg, J.

face is not "relatively nonabrasive" or "unabrasive", there is no infringement. A method or process claim is not infringed unless the accused process utilizes *all* steps, stages and elements of the method claimed in the patent. Conclusion of Law No. 16, citing Engelhard Industries Inc. v. Research Instrumental Corporation, 324 F.2d 347, 351 (9th Cir.); cert. den. 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215; Texas Rubber & Specialty Corporation v. D. & M. Machine Works et al., 81 F.2d 206, 209 (5th Cir.); Getty v. Kinzbach Tool Co., Inc., 119 F.2d 249 (5th Cir.); FMC Corporation v. City of Greensboro, 208 F.Supp. 494, 503 (M.D.N.C.).

■ Claims are to be interpreted and read in the light of the description given in the specifications. United States v. Adams, 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572.

After expressing preference for a belt having a cork surface as the rubbing medium, the patent says, "Any other flexible, yielding, relatively nonabrasive frictional rubbing medium or frictional belt material, such as canvas, or other cloth made of natural or synthetic fibers, may be employed. . . ." Finding No. 5. Sandpapers, coarse or fine, are not mentioned in the patent. "It should be noted also that my process does not make a rough surface smooth, nor does it involve the abrasive cutting or removal of any material." Finding No. 23. It "is essentially a nonabrasive process, as is clear from the fact that even a very light pencil mark made on a piece of wood before treatment is not re-

moved therefrom during the surface treatment." (Apx. 2A, col. 4, lines 13–16). Clearly, the invention claimed in Alexander's patent describes a process that employs a relatively nonabrasive or an unabrasive rubbing medium involving no abrasive cutting or removal of any wood during the surface treatment.

■ Does the accused process of Georgia-Pacific which utilized a fine sanding operation (a coated abrasive) rather than cork, canvas or other cloth, to obtain essentially the same result as Microsealing, including densification,[3] infringe on the patent? Does Georgia-Pacific's process utilize an abrasive rubbing medium or an unabrasive or relatively nonabrasive one? Does defendant's process involve removal or cutting of material during the surface treatment of plywood?

These are essentially questions of fact and remain such no matter how finely drawn the lines of demarcation may be. I reject the contention of plaintiff that the findings of fact, including No. 56, are mere, erroneous conclusions of law.

### 3. Report of Special Master

On March 19, 1971, the Special Master filed a report finding no infringement by Georgia-Pacific. Lengthy objections to the findings and conclusions were submitted by General Plywood. Argument thereon was had in August, 1971. At that time I remanded the case to the Master for additional findings.[4]

Following the remand, the Special Master held another evidentiary hearing at which additional evidence was

---

3. "But, it is well settled that a man cannot have a patent for the function or abstract effect of the machine, but only for the machine which produces it." Corning v. Burden, 15 Howard 252, 14 L.Ed. 683; Bauer v. Bogalusa Paper Co., 96 F.2d 991, 995 (5th Cir.).

4. I stated in my Order of remand dated August 18, 1971, that in the "able and carefully considered report" of the Special Master he did not reach factual issues which he said existed as to heat insulation, yielding, and densification. I fur-

ther directed Mr. Simpson to consider independently of the decisions of the District Court in Kentucky and the Sixth Circuit: "the basic scope and effect of the patent with particular reference to whether the Georgia-Pacific process involves an abrasive cutting action on plywood panels so as to compel a holding of non-infringement or whether such 'sanding' or cutting as occurs in its use of a 10/0 aluminum oxide belt may be considered 'relatively nonabrasive' as that term is used in said Alexander patent."

presented. The testimony of Dr. Norman Charles Franz, Professor of Forestry at the University of British Columbia who testified as an expert witness for General Plywood, covers 223 pages of the transcript which is 290 pages overall. The record in this case, I will add, contains more than 16,500 pages of typewritten and printed matter.

Dr. Franz testified that "Sanding is . . . a machine process involving the actual cutting away of the material. The microsealing process is primarily a heating and deformation under pressure . . . the two are quite distinct in their operation." Tr., 25. He said that the demonstration panels clearly indicated "the similarity of the use of a cork microseal belt at patent conditions and the 10/0 glue-bonded belt at what is reputed to be Georgia-Pacific conditions. . . ." Tr., 66–67 (11/9/1971).

On January 4, 1972, the Special Master filed Findings of Fact and Conclusions of Law in respect to defendant's motion for summary judgment as to infringement. He concluded that a sanding operation is excluded from the scope of the Alexander patent (Conclusion No. 14) and found that the patent is not infringed by Georgia-Pacific's accused process. Mr. Simpson said: "The process employed by Georgia-Pacific does result in the removal of wood and does result in the production of dust. It is abrasive, although to a limited extent as compared to the belts with a 6/0 or 2/0 degree of fineness. Nevertheless Georgia-Pacific, in using this 10/0 aluminum oxide belt in its process, is using an abrasive process and it is sanding. Its process is outside of the scope of the Alexander Patent and it does not infringe." Conclusion No. 15.

The Special Master found that the "evidence shows that Georgia-Pacific's process is abrasive—is creating dust. Georgia-Pacific is accomplishing essentially the same result in its process as does General Plywood with its process —but the result accomplished by Georgia-Pacific is by the use of an inherent sanding process (although of a very fine grade of abrasiveness) and, therefore, is not infringing on the General Plywood process." Finding No. 36. The Master rejected plaintiff's contention that any sanding by the defendant is merely incidental to the Microsealing process which allegedly it is practicing in the light of the fineness of degree of the 10/0 aluminum oxide belt used by it.

### 4. Standards of Review by Court as to Master's Findings of Fact

The master's findings of fact in non-jury cases must be accepted "unless clearly erroneous." Rule 53(e)(2), F.R.Civ.P. But the "great weight" to which they are entitled (Baker v. Simmons Company, 325 F.2d 580, 582, 1st Cir.) is not an "invitation to abdicate the judicial function upon receiving a master's report." Locklin v. Day-Glo Color Corporation, 429 F.2d 873, 876 (7th Cir.). The Court of Appeals of this Circuit has said that the district court does not have the right "to reconsider, weigh and evaluate evidence to arrive at its own independent conclusions." Bynum v. Baggett Transportation Company, 228 F.2d 566, 569, n. 3. The same Court holds that a district judge must determine as a judicial matter that the findings meet the test of not being "clearly erroneous" and are "the product of correct principles of law." A finding must be set aside if the judge "is left with the impression that the result is not the truth and right of the case." He not only has the obligation to determine that the attacked findings are supported by "substantial evidence" but also to see that the record satisfies that additional test. See W. R. B. Corporation v. Geer, 313 F.2d 750, 753 (5th Cir.).

### 5. Prior Art

Where an accused device or process is substantially identical with the known art, there is no infringement. See Stewart-Warner Corporation v. Lone Star Gas Co. et al., 195 F.2d 645, 649 (5th Cir.).

■ An advertisement of Timesavers, Inc. in a trade journal in January, 1955 (Georgia-Pacific's 6A and 6B) recommended use of the wide belt sander with aluminum oxide belts having grit with a grit fineness of 9/0. See Finding No. 11. This publication appeared more than one year prior to the filing date for the patent suit in 1956.[4]

If General Plywood's claims are construed broadly enough to cover the use of a 9/0 sandpaper on a wide belt sander, the prior publication would be a fatal anticipation of its claims. Admittedly, if Georgia-Pacific's was a "sanding operation" then it would not infringe since sanding was covered by prior art under the McDonald Patent No. 2,565,036. In the course of the proceedings in the Patent Office, Alexander stated in distinguishing his patent from the McDonald patent, "The sanding art cannot be used for nonabrasive polishing."

### 6. *Prosecution of the Patent*

■ "It is, of course, well settled that an invention is construed not only in the light of the claims, but also with reference to the file wrapper or prosecution history in the Patent Office." Graham v. John Deere Co., 383 U.S. 1, 33, 86 S. Ct. 684, 15 L.Ed.2d 545. Findings Nos. 16 through 22 of the Special Master deal with the history and prosecution of the patent. He concluded that the terms "relatively nonabrasive" and "unabrasive" were inserted into the patent claims to distinguish the process from a sanding operation.

The development of the art in the field of sanding was obviously such that hair-splitting was necessary on the part of Alexander in distinguishing his process from prior art. He ended up describing the rubbing medium to the Patent Office as one that "wears the wood away at a relatively insignificant or slow rate approaching zero" and was claimed to produce a densified surface "without any noticeable production of 'sander dust'." Under Findings Nos. 28 through 36 the accused Georgia-Pacific process was found to be abrasive and that it produced quantities of sander dust as well as loss of weight.

■ The interpretation of a patent and claims presents a question of law in the light of prior art, the file wrapper and the prosecution history. But the purpose and intent of additional or modified claims as so reflected and the resultant effect on elimination or narrowing of the original claims is a factual rather than a legal issue. "Claims as allowed must be read and interpreted with reference to rejected ones and to the state of the prior art; and claims that have been narrowed in order to obtain the issuance of a patent by distinguishing the prior art cannot be sustained to cover that which was previously by limitation eliminated from the patent." Graham v. John Deere Co., *supra*, 383 U.S. at 33, 86 S.Ct. at 702. See also I. T. S. Rubber Company v. Essex Rubber Company, 272 U.S. 429, 443–444, 47 S.Ct. 136, 71 L.Ed. 335.

■ The facts in this case would have justified a finding by the Special Master that under Alexander's representations to the Patent Office the phrase "relatively nonabrasive" means "nonabrasive" so as to make the scope of the belt limitations under claims 1–11 the same as the "unabrasive" claims of 12–18. However, I do not gather from the Report that Mr. Simpson did more than find that the "file wrapper estoppel" limits claims 1–11 to use of a process involving a "relatively nonabrasive" rubbing medium. Evidently the Special Master accepted at face the patent claim as to a process employing a "relatively nonabrasive" rubbing surface. He concluded that "In view of the representations of Alexander to the Patent Office that his process was relatively nonabrasive, did not produce sander dust, did

---

4. Under the patent laws a person is not entitled to a patent which has been described in a printed publication more than one year prior to the application for the patent. 35 U.S.C. § 102(b).

not result in the removal of wood and similar representations in order to distinguish his process from the prior art of the McDonald Patent, then it is evident that a sanding operation is excluded from the scope of the Alexander Patent." Conclusion No. 14.

That finding is authorized by the evidence.

### 7. Confirmation and Adoption of the Special Master's Report

As earlier noted, the reviewing judge cannot rubber stamp the master's findings of fact. It is not given a court merely to say that findings are not clearly erroneous; are supported by substantial evidence, and are therefore approved. While the reviewing judge does not, as stated, reweigh and reevaluate the evidence and arrive at his own independent conclusions, he must ascertain that substantial evidence supports the findings; that they do not represent other than the "truth and right of the case", and that they are the product of correct principles of law. Applying these standards of review, the Findings of Fact and Conclusions of Law contained in the report of the Special Master filed on January 4, 1972, are confirmed and adopted.

I add a comment. In the Kentucky litigation the District Judge found no infringement of the Alexander patent where the accused process was almost identical to that used by Georgia-Pacific. The Sixth Circuit affirmed the lower court. It said that "the record appears to demonstrate that what U.S. Plywood did was essentially to move a fine sanding operation which was already being used in the industry for finish polishing to an earlier point in the production process and apply it to wood in the white panels." 370 F.2d at 507.

Plaintiff discounts, if it does not brush aside, that decision, arguing that there was merely a failure of proof and that no findings as to densification of the surface wood or that the rubbing medium is heat insulating and flexible were made in the litigation in Kentucky. While the decision has no binding effect in the Fifth Circuit, it is very persuasive where General Plywood has relitigated in the Southern District of Georgia the basic issue involved in the action in the Western District of Kentucky.

### 8. Second Cause of Action: Claim of Breach of Confidential Disclosure

The Special Master was not directed to deal with that part of the complaint which alleges that General Plywood disclosed in confidence its cork belt process to Georgia-Pacific and that, in violation thereof and as a breach of trust, the latter appropriated such process to its own use. A similar claim was made by General Plywood in its litigation against United States Plywood Corporation in Kentucky where the Sixth Circuit found against General Plywood on disclosure of another's trade secret. See 370 F.2d 507–508.

No evidence has been taken relating to the confidential disclosure claim. The issue was not raised in the defendant's Motion for Summary Judgment and the Special Master did not address himself to it. See page 2 of Report of Special Master. There has been no argument thereon in this Court. I have not thought through the effect of the Master's findings in the case as related to that phase of the litigation. In this posture of the matter, I cannot rule upon plaintiff's Second Cause of Action.